UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL MANRIQUEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>JAMES TILTON; et al.,<br><br>    Defendants. | No. C 08-2427 MHP (pr)<br><br>**ORDER OF PARTIAL DISMISSAL AND TRANSFER** |

## INTRODUCTION

Daniel Manriquez, currently an inmate at Pelican Bay State Prison, filed this pro se civil rights action under 42 U.S.C. § 1983. The court reviewed his complaint pursuant to 28 U.S.C. § 1915A, and dismissed it with leave to amend. He then filed an amended complaint, which is now before the court for review pursuant to § 1915A.

The 44-page amended complaint has 47 defendants and 47 causes of action concerning a variety of prison conditions at the California Substance Abuse Treatment Facility and State Prison in Corcoran (the "Corcoran prison") and at Pelican Bay State Prison. The amended complaint can be divided into three parts. Part A concerns Manriquez's re-validation as an associate of a prison gang and his periodic reviews while he was at the Corcoran prison. Part B concerns the periodic reviews of Manriquez while he was housed at Pelican Bay's security housing unit ("SHU") and the harsh conditions in that facility. Part C concerns various problems with the mail that Manriquez experienced at Pelican Bay.

For the reasons discussed below, the claims in Part A should be litigated in the Eastern District and will be transferred there, the claims in Part B will be dismissed for

failure to state a claim, and the claims in Part C will be dismissed as improperly joined.

## BACKGROUND

Manriquez was validated as an associate of the Mexican Mafia (EME) prison gang in 1998 and was placed in administrative segregation ("ad-seg"). Amended Complaint ("Am. Compl."), Exs. at 45. Eventually, he was reviewed for inactive status and validated as an inactive associate of EME in 2004 and was transferred to the Corcoran prison in January 2005. See id.

Part A of the amended complaint concerns acts and omissions that occurred while he was at the Corcoran prison starting in January 2005. Am. Compl., ¶¶ 1-65, 90-115, and 135-148 and causes of action 1-19, 26-31, and 34-36. At the Corcoran prison, Manriquez was investigated, put in ad-seg and eventually re-validated in April 2007 as an associate of the EME based on a new piece of evidence, i.e., a February 9, 2007 confidential memorandum. See Am. Compl., Exs. at 75. (The confidential information disclosure form provided to Manriquez stated that a "confidential memorandum dated 02/09/2007, indicated you sent correspondence to a validated Mexican Mafia (EME) associate inmate Ocotorena D67758, seeking permission from EME members Guzman, C41587, and Padilla D51019 to control Facility 'C' at CSATF/SP [i.e., the Corcoran prison], once established you would then control all EME related activities on behalf of the aforementioned EME members." Am. Compl. Exs. at 54.) Manriquez had one or more periodic reviews of his new ad-seg placement and filed several inmate appeals in which he vehemently protested his re-validation. Eventually, it was determined that he would be sent to a SHU for ad-seg placement, and Pelican Bay's SHU was selected.

Part B of the amended complaint concerns Manriquez's retention in the Pelican Bay SHU. Am. Compl., ¶¶ 66-89, 116-134, and causes of action 20-25, 32-33. He alleges that after he arrived at Pelican Bay's SHU, he spoke to defendant Parker, apparently in preparation for a committee meeting the next day. See Am. Compl., ¶ 66 and Complaint (Docket # 1), Exs. at 200. Parker allegedly told Manriquez he would remain the SHU until November 2012 based on the validation. Manriquez argued to Parker that prison officials

2

lacked the authority to retain him because the OCS had not restored the "currently active" status and that they were violating his right to due process because they had made their decision to retain him even before he attended his hearing. Am. Compl., ¶ 67.

On December 4, 2007, he went before a Pelican Bay Unit Classification Committee ("UCC") consisting of defendants Silva, Nealy and Parker. Am. Compl., ¶ 67 and Exs. at 80. At that committee meeting, Manriquez "reiterated his previous arguments." Am. Compl., ¶ 67. The committee members told him that, "based on the validation, they lacked the authority to do anything until 2012, that they cannot even recommend inactive status until then based on one point of association. They then affirmed plaintiff[']s retention." Id. The committee members' conduct allegedly showed "that [associate warden] Bradbury and [warden] Horel had failed to train & supervise them because they assert that based on the validation, they lacked the authority to do anything until 2012, that they cannot even recommend inactive status until then based on one point of association." Am. Compl., ¶ 67.

On March 8, 2008, Manriquez appeared before a Pelican Bay UCC committee consisting of Cox and Silva. Id. at 68. Manriquez again argued that he was entitled to have his views considered before they made their decision and "was entitled to be considered for release & released given there is no finding plaintiff is 'currently active nor a security threat' & that he's at least entitled to inactive status given that the item at most shows 'association' & not 'gang activity' as required. § 3341.5(c)(5)." Am. Compl., ¶ 68. Defendants allegedly refused to consider his release or inactive status. The form prepared after the committee appearance stated that Manriquez had appeared for his 180-day review, that he was serving an indeterminate term in the SHU due to his affiliation as an active associate of the Mexican Mafia prison gang, that the validation had been reviewed by the committee and found to meet the criteria required in 15 Cal. Code Regs. § 3378(c), that Manriquez was informed that the departmentally-recognized avenues for release from the SHU were to debrief or be determined to be inactive, and that the last source document used in the validation process was "dated 2-9-07, indicating recent (within 6 years) gang activity." Am. Compl., Exs. at 81. The form also stated that Manriquez "asked committee to refer him for an inactive review.

3

Committee informed 'S' that he will be eligible for an inactive review after 11/10/2012." Id.

The conditions in the Pelican Bay SHU allegedly were oppressive. The conditions allegedly were physically severe and socially isolating See Am. Compl., ¶¶ 116-134.

Part C of the amended complaint concerns the mail service at Pelican Bay. Manriquez's mail allegedly was interfered with several times at Pelican Bay. See Am. Compl., ¶¶ 149-185 and causes of action 37-47.

## DISCUSSION

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. See 28 U.S.C. §1915A(a). The court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. §1915A(b)(1),(2).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the violation was committed by a person acting under the color of state law. See West v. Atkins, 487 U.S. 42, 48 (1988).

A.  Pelican Bay SHU (Part B of Amended Complaint)

   1.  Periodic Reviews

Due process requires that prison officials engage in some sort of periodic review of the inmate's confinement following his placement in administrative segregation. See Hewitt v. Helms, 459 U.S. 460, 477 n.9 (1983); Toussaint v. McCarthy, 801 F.2d 1080, 1101 (9th Cir. 1986). Those periodic reviews must be more than "meaningless gestures" to satisfy due process. Toussaint v. Rowland, 711 F. Supp. 536, 540 n.11 (N.D. Cal. 1989) (citing Toussaint v. McCarthy, 801 F.2d at 1102). The "meaningless gesture" phrase was drawn from this statement from the Ninth Circuit: "Since administrative segregation must not be a pretext for punitive isolation, Hewitt, 459 U.S. at 477 n. 9, 103 S. Ct. at 874 n.9, the substantive criteria assure that plaintiffs' due process rights are not meaningless gestures."

Toussaint v. McCarthy, 801 F.2d at 1102. Hewitt makes clear that the constitutionally required periodic review is modest in scope:

> This review will not necessarily require that prison officials permit the submission of any additional evidence or statements. The decision whether a prisoner remains a security risk will be based on facts relating to a particular prisoner--which will have been ascertained when determining to confine the inmate to administrative segregation--and on the officials' general knowledge of prison conditions and tensions, which are singularly unsuited for "proof" in any highly structured manner. Likewise, the decision to continue confinement of an inmate pending investigation of misconduct charges depends upon circumstances that prison officials will be well aware of-most typically, the progress of the investigation. In both situations, the ongoing task of operating the institution will require the prison officials to consider a wide range of administrative considerations.

Hewitt, 459 U.S. at 477 n.9; cf. Wilkinson v. Austin, 545 U.S. 209, 217, 224 (2005) (upholding ad-seg placement policy that called for 30-day review of file and annual reviews at which inmate was allowed to appear and present his views).

Manriquez alleges that his periodic reviews violated his right to due process because they were meaningless gestures. Despite his conclusory allegation of a meaningless gesture, his factual allegations show that the complained-of periodic reviews provided at least the procedural protections to which he was entitled: a periodic review at which the reason for the placement was considered and at which he was allowed to present his views. The periodic review at which Manriquez was able to present his point of view and make his numerous legal and technical arguments about ad-seg placement more than satisfied due process. See Hewitt, 459 U.S. at 477 n.9. That the hearings did not result in Manriquez's desired outcome did not make them meaningless gesture as he suggests. In order that not every failed applicant could allege a due process violation by contending that a hearing was a meaningless gesture, there must be something more than an undesired outcome for the proceeding to be a meaningless gesture. Manriquez has not alleged any facts that would show that something that would turn the merely unsuccessful (from his perspective) hearing into a meaningless gesture.

Manriquez contends that the hearings were meaningless because committee members already had the memorandum of decision written up when he arrived. Having a tentative decision drafted in advance does not show that an oral hearing was meaningless. See Stang

v. I.R.S., 788 F.2d 564, 566 (9th Cir. 1986) (district court did not deprive litigant of due process by issuing tentative ruling before hearing on motion to dismiss). Where, as here, the hearing concerns the retention of an inmate in ad-seg as a validated as a gang affiliate, the basis for that placement will be largely documentary, including documents that the inmate cannot see. Reviewing the documentation in advance does not render the hearing meaningless. That it was not meaningless is especially true in light of Manriquez's affirmative allegation that he was allowed to present his views to the committee at the hearings.

Manriquez also contends the hearing was meaningless because the hearing officers told him he would not get out of ad-seg until 2012. That appears to be nothing more than a realistic assessment of Manriquez's situation as the regulations applied to it, i.e., an inmate who had been validated as a gang affiliate might be released from the SHU after six years of inactivity. See Am. Compl. Exs. at 81; 15 Cal. Code Regs. § 3341.5(c)(5). His placement was noted as an indefinite placement on the form, and Manriquez was informed "that the Departmentally recognized avenues for release from SHU are through the debriefing process or through being determined to be an inactive prison gang member or associate." Am. Compl. Exs. at 80.

He also urges that the hearing was meaningless because the prison officials refused to release him or consider him for release. This contention is premised on his misunderstanding of the regulations and his erroneous view that the regulations required his release.  He suggests that the prison officials could not return him to ad-seg based on just one new document, but that is just what the regulations permit. See  15 Cal. Code Regs. § 3341.5(c)(6) (inmate who has been categorized as inactive and placed in the general population "may be returned to segregation based upon one reliable source item identifying the inmate as a currently active gang member or associate of the prison gang with which the inmate was previously validated. Current activity is defined as, any documented gang activity within the past six (6) years."); see also § 3378(g) (verification of active status "shall be approved or rejected by the chief, OCS, or a designee"); § 3378(h) ("classification

1 committee is authorized to return an inmate to a SHU based upon the restoration of the
2 inmate's gang status"); § 3023 ( "gang activity" occurs when inmates "knowingly promote,
3 further or assist any gang").

4 The requirement of periodic reviews does not require that the reviewer start from scratch and re-validate the inmate at each periodic review. Indeed, the process utilized here accomplishes some of the basic reasons for periodic reviews, e.g., an inmate could bring it to the attention of the committee that he wanted to debrief, or wrongly was being held because of a paperwork snafu (such as having someone else's documentation being used against him), or thought he met the criteria for an inactivity review. See generally Wilkinson, 545 U.S. at 225-26 (policy that provided for notice of the factual basis for the placement and a fair opportunity for rebuttal "safeguards against the inmate's being mistaken for another or singled out for insufficient reason" for placement). Manriquez had the periodic reviews constitutionally required. Accepting as true his factual allegations, he has not alleged facts that suggest any of them were meaningless procedures. The claims are dismissed.

### 2. Harsh SHU Conditions

Manriquez alleges that the conditions in the Pelican Bay SHU violated his Eighth Amendment rights. See Am. Compl., ¶¶ 116-134 and causes of action 32-33. The claims about the overall conditions of the SHU are dismissed without leave to amend. As an inmate in the SHU, Manriquez is a member of plaintiff class in the Madrid class action litigation concerning the SHU conditions. Judge Henderson in that case has ruled that the overall conditions of the SHU do not violate the Eighth Amendment for the non-mentally ill inmates therein. See Madrid v. Gomez, 889 F. Supp. 1146 , 1260-65 (N. D. Cal. 1995). Class members may not relitigate the claim individually.

The claims alleged in Part B are dismissed without leave to amend. Defendants Parker, Silva, Nealy, Cox, Bradbury, and Horel are dismissed from this action.

### B. The Mail Claims (Part C of the Amended Complaint)

Manriquez asserted several claims about interference with his mail while he was at Pelican Bay, i.e., that it had been improperly confiscated, read and switched on various occasions. See Am. Compl., ¶¶ 149-185 and causes of action 37-47. These claims are

7

dismissed as improperly joined.  Federal Rule of Civil Procedure 20(a) provides that persons may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction or occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a)(2).  Manriquez's mail claims are misjoined with the other claims in his complaint that concern the decisions to place and retain him in administrative segregation.  The mail claims do not arise out of the same transaction, occurrence or series of transactions or occurrences as the administrative segregation placement and retention decisions.  The mail claims also have a separate set of defendants.  No question of fact or law common to all defendants will arise in the action. Accordingly, the mail claims (i.e., those asserted in paragraphs 149-185 and causes of action 37-47 in the amended complaint) and the defendants associated with those claims (i.e., defendants Puente, Brandon, Countess, Wise, Bacci, Johnson, Harold, Strain, Harmon, and Basnett) are dismissed without prejudice to plaintiff filing a new action asserting those claims.

C.      Claims Arising At The Corcoran Prison (Part A of the Amended Complaint)

Paragraphs 1-65, 90-115, and 135-148, as well as causes of action 1-19, 26-31, 34-36 pertain to acts or omissions at the Corcoran prison in Kings County or at the CDCR headquarters in Sacramento County – both of which counties are within the venue of the Eastern District of California – and are against defendants residing in the Eastern District of California.[1]  Venue for these claims is preferable in the Eastern District because that is where the acts complained of against the remaining defendants are alleged to have occurred, and also where the remaining defendants are located.  See 28 U.S.C. 1391, 1404.  Accordingly, in the interests of justice, this case will be transferred for resolution of the remaining claims to the United States District Court for the Eastern District of California.  See 28 U.S.C. 1404(a).

**CONCLUSION**

For the reasons set out above, the claims in Part B of the amended complaint are

8

dismissed for failure to state a claim upon which relief may be granted and the claims in Part C are dismissed as improperly joined. Defendants Parker, Silva, Nealy, Cox, Bradbury, Horel, Puente, Brandon, Countess, Wise, Bacci, Johnson, Harold, Strain, Harmon, and Basnett are dismissed from this action.

With the dismissal of the foregoing claims and defendants, the claims that remain are those in Part C and pertain to acts or omissions that occurred at the Corcoran prison. This case is TRANSFERRED to the United States District Court for the Eastern District of California for adjudication of the remaining claims. *See* 28 U.S.C. 1404(a). The clerk shall transfer this matter forthwith and close the file.

IT IS SO ORDERED.

Dated: March 29, 2011

_____
Marilyn Hall Patel
United States District Judge

# **NOTE**

1.     Manriquez mentions some Pelican Bay defendants in paragraph 110 of his amended complaint but the cause of action associated with that paragraph does not mention them. Leave to amend to allege an equal protection claim against the Pelican Bay defendants will not be granted because the claim would be meritless. Manriquez's equal protection theory is that he did not receive the same or better procedural protections than those provided to inmates in the SHU for more serious offenses ignores the fact that he is differently situated from those persons. Evidence of different treatment of unlike groups does not support an equal protection claim. See Thornton v. City of St. Helens, 425 F.3d 1158, 1168 (9th Cir. 2005). His allegations and exhibits plainly show that he is in administrative segregation rather than disciplinary segregation. The procedural protections for the two differently situated groups are different, as the court explained at length at pages 5-6 of the order of dismissal with leave to amend.